# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| Harbor Associates Limited Partnership | : | |
| 1001 N. U.S. HWY 1 | : | |
| Jupiter, FL 33477 | : | |
| | : | |
| And | : | CIVIL ACTION NO.: |
| | : | |
| Dr. Krishna P. Singh | : | |
| d/b/a Harbor Associates Limited Partnership | : | |
| 1001 N. U.S. HWY 1 | : | |
| Jupiter, FL 33477 | : | |
| | : | |
| And | : | |
| | : | |
| Kapex I, LLC | : | |
| 202 Gomez Road | : | |
| Hobe Sound, FL 33455 | : | |
| | : | |
| And | : | |
| | : | |
| Multi-Decades Trust | : | |
| d/b/a Harbor Associates Limited Partnership | : | |
| 202 Gomez Road | : | |
| Hobe Sound, FL 33455 | : | |
| | : | |
| Plaintiffs, | : | **JURY TRIAL DEMANDED** |
| | : | |
| v. | : | |
| | : | |
| Micron Medical Corporation | : | |
| 108 West 13th Street | : | |
| Wilmington, DE 19801 | : | |
| | : | |
| And | : | |
| | : | |
| Micron Devices, LLC | : | |
| 108 West 13th Street | : | |
| Wilmington, DE 19801 | : | |

|  | : |
| And | : |
|  | : |
| StimGuard, LLC | : |
| Ocean Centre, Montagu Foreshore, | : |
| Easty Bay Street, | : |
| Nassau, New Providence | : |
| The Bahamas | : |
|  | : |
| And | : |
|  | : |
| John Does 1-10 | : |
|  | : |
| Defendants. | : |

## CIVIL ACTION COMPLAINT

### I.      Jurisdiction and Venue

1.      Jurisdiction in the Honorable Court is based on diversity conferred by

28 U.S.C. § 1332; supplemental jurisdiction over state law claims is granted by 28

U.S.C. § 1367.

2.      Venue lies in this district in that, upon information and belief,

StimGuard, LLC, and Micron Devices, LLC, are now defunct and all assets of both

StimGuard and Micron Devices have been transferred to Micron Medical

Corporation, which is a Delaware corporation, at least one (1) Defendant resides,

maintains a principal place of business, and/or does business within this district.

## II.    Parties

3.      Plaintiff, Harbor Associates Limited Partnership ("Harbor"), is a corporation by virtue of the laws of the State of Florida, with its headquarters located at the above-captioned address.  Harbor is a citizen of Florida.

4.      Plaintiff, Dr. Krishna P. Singh ("Dr. Singh"), is an adult individual, doing business as Harbor Associates Limited Partnership. Plaintiff, Dr. Singh is a citizen of Florida.

5.      Plaintiffs, Kapex I, LLC ("Kapex"), and Multi-Decades Trust are corporations by virtue of the laws of the State of Florida, with their headquarters located at the above-captioned address.  These entities are citizens of Florida.

6.      Defendant, Micron Medical Corporation ("Micron Medical"), is a corporation by virtue of the laws of State of Delaware, with its headquarters located at the above captioned address.  Upon information and belief, Micron Medical is a citizen of Delaware.

7.      Defendant, Micron Devices, LLC ("Micron Devices" and collectively with Micron Medical, the "Micron Defendants"), is a corporation by virtue of the laws of Delaware, with its registered agent located at the above captioned address. Upon information and belief, Micron Devices is a citizen of Delaware.

8.      Defendant, StimGuard, LLC ("Stimguard"), is a corporation by virtue of the laws of Commonwealth of the Bahamas, with its headquarters located at the

above captioned address.  Upon information and belief, StimGuard is a citizen of Commonwealth of the Bahamas.

9.      Defendants, John Does 1-10, is a moniker/fictitious name for individuals and entities currently unknown but will be substituted when known, as affiliated, associated or liable hereunder for the reasons set forth below or inferred therefrom.  Each of these parties are incorporated as Defendants in each and every count and averment listed above and below.  Upon information and belief, Defendants, John Does, were agents, servants, workmen, or employees of Co-Defendants, liable to Plaintiff hereunder.

### III.   Operative Facts

10.     Around early 2015, Plaintiffs were approached by Dr. Sanjay Gupta towards investing in several medical device "start-up" companies including Defendants, StimGuard, and Micron Devices.

11.     On or about May 15, 2015, Harbor agreed to provide financing of Five Hundred Thousand Dollars ($500,000) to StimGuard in the form of a convertible note (the "Note") with a maturity date on or about May 15, 2016 (the "Maturity Date").  (Exh. A). Plaintiffs, Dr. Singh, Kapex, and Multi-Decades Trust, are partners and owners of Plaintiff, Harbor.

12.     Additionally, on or about June 12, 2015, Dr. Sanjay Gupta, provided a personal guarantee of the Note and agreed that, in the event a sale or other such

transaction failed to occur prior to the Maturity Date, he would personally reimburse Harbor in the amount of $500,000 plus an annualized return of fifteen percent (15%).  (Exh. B).

13.     Dr. Gupta is not a passive investor in StimGuard; he is both an active advisor and Board Member of the company.

14.     Pursuant to the express terms in the Note, all unpaid principal, together with any then unpaid and accrued interest and other amounts payable hereunder, shall be due and payable when, after the twelve (12) month anniversary of the initial issuance of the Note, such amounts are declared due and payable by a Majority of Interest of Investors (as defined in the Note).  Id.

15.     Harbor's investment was not converted to equity in the first twelve months.

16.     All other investors have converted. Since all other investors converted their notes to equity, Harbor holds more than fifty percent (50%) of the aggregate outstanding principal amount of the notes and therefore has the sole right to declare the Note due and payable. (Exh. A).

17.     Laura Perryman is the managing member of StimGuard and Micron Defendants.

18.     On or about March 22, 2017, Harbor's representative communicated to Ms. Perryman that Plaintiff, Dr. Singh was interested in selling his $500,000

note.  Perryman replied that she was meeting with investors and would convey the offer at that time.

19.    On or about April 6, 2017, Perryman responded to Plaintiffs that StimGuard "sent it (the Note) around to a few investors for consideration in a larger round."

20.    On or about April 25, 2017, Perryman confirmed that StimGuard was "working on a replacement for you (Dr. Singh) still at leas(t) several weeks away! Interest is accumulating meanwhile we left as note for now per request.  I have many interested parties!"

21.    On or about May 11, 2017, Perryman e-mailed, "it looks like at our sale in August we can arrange the wire."

22.    In July 2017, without Plaintiff's knowledge, Perryman signed a stock certificate showing Plaintiff's Note had been converted to equity. (Exh. U).

23.    Notwithstanding, on several occasions after July 2017, Perryman verified that Harbor's investment in StimGuard had not been converted into equity. For example, on or about January 31, 2018, Perryman stated in an e-mail, "For StimGuard we did not convert your notes to shares at your request."

24.    On or about April 13, 2018, Harbor sent Perryman a letter requesting Perryman provide a capitalization table representing the investors in the Defendant

companies, among other information.  The letter explained that there had been a consistent lack of communication and transparency by Defendants to Plaintiffs.

25.     On or about April 13, 2018, Perryman provided to Plaintiffs a StimGuard capitalization table which showed two (2) new investors added (BioPacific Investments & Baker and Eastlack Fund) on July 31, 2017, for a total capital raise of $1,312,500.   This amount is substantially larger than the $500,000 Note held by Dr. Singh.  It shows that StimGuard decided to raise new capital rather than have an investor buy the Note of Dr. Singh as Perryman had communicated would be happening to Plaintiffs for several months before this round of fundraising.

26.     On or about April 13, 2018, Perryman also communicated to Plaintiffs that "For StimGuard we have you listed as a redeemable investor, everyone else has converted."  A "redeemable investor" is distinct from a shareholder.

27.     On or about May 4, 2018, Harbor sent formal demand letters to Perryman and Dr. Gupta via regular and certified mail.  (Exhs. C and D).  The demand letters reiterated that Harbor's investment was due, with interest within twenty (20) days of receipt of the letters.

28.     On or about June 4, 2018, Harbor sent a second demand letter to Perryman.  (Exh. E).

29.     Per the Second Demand Notice Pursuant to Section 2 of the Note, Harbor demanded payment within ten (10) business days, or it would have no alternative but to pursue any and all remedies available under the Note or otherwise available at law or in equity.  Id.

30.     On or about June 18, 2018, Ms. Perryman responded via e-mail and acknowledged receipt of the demand letters.

31.     That same day, Perryman revealed that Plaintiffs note had been converted to shares without Plaintiffs' authorization.  Perryman e-mailed, "For StimGuard LLC, that is a Bahamian company. **The shares were issued and can now be sold privately** with the Company consent of a majority of the shareholders. We will be holding a board meeting this week and need a letter from your client as well that states the intent to sell the shares at the purchase price. We can then send a request out to the shareholders."

32.     Perryman knew this statement was false at the time she made this statement. Perryman intentionally misrepresented the status of whether the Note converted to avoid repaying Plaintiffs' investment.

33.     Regardless of the contradictory information received from Perryman about whether the Note converted to equity, conversion could not have occurred without Plaintiffs' knowledge.

34.    Two mechanisms exist through which the Note could have converted. First, the Note could have converted voluntarily, with Dr. Singh's knowledge or consent. This did not occur.

Second, the Note could have automatically converted through the conversion procedure described in section 4(c)(i) of the Note. (Exh. A to Plaintiffs' Complaint – the Note). That section reads:

> (c) *Conversion Procedure*.
>
> (i) <u>General</u>. Written notice shall be delivered to Investor at the address last shown on the records of the Company for Investor or given by Investor to the Company for the purpose of notice, notifying Investor of the conversion to be effected, specifying the Conversion Price, the principal amount of the Note to be converted, together with all accrued and unpaid interest to be converted, the date on which such conversion is expected to occur and calling upon such Investor to surrender to the Company, in the manner and at the place designated, the Note… <u>Id</u>.

Under this conversion procedure, written notice must be sent to Plaintiffs' address, including the conversion price, *inter alia*. None of the specific information required in section 4(c)(i) was provided to Plaintiffs. Thus, conversion did not happen automatically. The Note was not converted voluntarily or automatically.

35.    Based on the aforesaid written confirmations from Perryman in 2018, and Defendants' failure to provide required notice of automatic conversion, the Promissory Note outstanding Principal had not been previously converted to equity shares.

36.     As a result of Defendants converting the Note by StimGuard without Plaintiffs' consent, in an attempt to avoid the Note principal and interest as due and payable as per the Second Demand Notice, Plaintiffs have suffered significant financial damages.

37.     StimGuard is now in Default of the Convertible Promissory Note per Section 2(a) "The Company shall fail to pay (I) when due any principal payment on the due date hereunder"... resulting from our demand of payment as the Majority in Interest of Investors.  (Exh. A).

38.     It is also believed that Defendants will not repay Plaintiffs because Plaintiffs have a separate $500,000 investment in a separate company called StimQ Medical, LLC ("StimQ").  (Exh. F).  StimQ has a believed valuation of approximately $200 million which was provided by Dr. Gupta to Harbor representatives on or about June 5, 2018 in an apparent text message between Gupta & Perryman.  StimGuard's shares are considerably less valuable.

39.     Upon information and belief, Defendants will only reimburse the StimGuard investment if Plaintiffs agree to be reimbursed for the separate StimQ investment at or near the original investment amount – rather than the present-day higher value of the StimQ shares (Plaintiffs are entitled to the present-day higher value).

40.     As a further result of the aforesaid, Defendants have caused Plaintiffs severe investment opportunity loss during the term of these investments – both in potential income and time spent by Plaintiffs' investment advisors.

### Breach of Settlement Agreement

41.     Around fall 2018, Plaintiffs and Defendants, StimGuard and Micron Devices(hereinafter "Settlement Defendants") except for Dr. Gupta began negotiated a settlement of this matter.

42.     Throughout negotiations, the Settlement Defendants were represented by counsel and had the benefit to consult with their counsel: Michael Bonkowski, Esq., Bradley Lehman, Esq., and the law firm Cole Shotz, P.C.

43.     Plaintiffs were represented by undersigned counsel, Matthew Weisberg, Esq., David Berlin, Esq., and Weisberg Law.

44.     After several months of negotiating, the parties agreed that the Settlement Defendants would pay Plaintiffs the sum of $500,000, plus 10.5 percent interest. This would represent the repayment of Dr. Singh's investment in StimGuard.

45.     The parties further agreed that Plaintiffs' equity shares in StimQ would remain.

46.     Numerous terms were negotiated and memorialized in emails between counsel for both parties.

47.     On December 7, 2018, Mr. Bonkowski indicated that a settlement in principle had been reached.  (Exh. G).

48.     Over the next few weeks, the parties negotiated several more terms.

49.     On January 7, 2019, Mr. Bonkowski wrote to Plaintiffs' Counsel, "We are essentially ready to make you whole.  That's the deal." (Exh. H).

50.     Later that same day, Plaintiffs' Counsel responded to Mr. Bonkowski that Plaintiffs would additionally agree to Settlement Defendants' position that any future litigation be subject to mandatory mediation and arbitration – but that arbitration be governed by federal law and that the arbitrator be a former federal judge. (Exh. I)

51.     On January 8, 2019, Defense counsel responded: "Matthew: StimQ is not subject to federal but Bahamian law.  We will not agree to applying federal law to any aspect of this matter or otherwise submitting StimQ to federal jurisdiction." (Exh. J).

52.     Later that day, Plaintiffs (through counsel) offered to make the agreement silent about the question of governing law in a future arbitration. (Exh. K).

53.     Settlement Defendants' counsel responded: "Thanks. That works for us. Kindly circulate a draft release agreement when it is ready for our review." (Exh. L).

54.     On January 22, 2019, Plaintiffs' counsel forwarded Settlement

Defendants' counsel a release, which mirrored the aforesaid terms. (Exh. M).

55.     On January 30, 2019, Settlement Defendants' counsel responded that

the mediation and arbitration must be binding. (Exh. N).

56.     The same day, Plaintiffs' counsel clarified that mediation would not

be binding, but arbitration would be binding.  (Exh. O).

57.     The same day, Settlement Defendants' counsel responded that

Plaintiffs' counsel had cleared up the confusion.  Settlement Defendants' counsel

confirmed that mediation would be mandatory but not binding, and if mediation

was unsuccessful, any future matter would go to binding arbitration.  (Exh. P).

58.     Plaintiff's counsel then responded, "yep-agreed." (Exh. Q).

59.     Settlement Defendants' counsel replied, "Great. Thanks. I'll send

around a cleaned-up version of the agreement to reflect that later this evening or

first thing in the morning so that we can get it wrapped up." (Exh. R).

60.     The parties agreed to and entered into an enforceable settlement.

61.     The settlement was negotiated through counsel with full authority

from the parties.

62.     For several weeks, Plaintiffs' counsel followed up with Settlement

Defendants' counsel to learn the status of the signed release. Settlement

Defendants' counsel advised Plaintiffs' counsel by phone that their clients were

traveling and that they would get back to Plaintiffs' counsel soon.

63.   Finally, after several weeks, on or about February 20, 2019,

Settlement Defendants' counsel informed Plaintiffs' counsel in a phone call that

Settlement Defendants refused to sign the release and had terminated Settlement

Defendants' counsel as their attorneys.

64.   The Settlement Defendants' refusal to sign constitutes a breach of

contract.

### Stimguard and Micron Devices' *De Facto* Merger with Micron Medical Corporation

65.   Around Spring 2020, StimGuard, LLC announced it was changing its

corporate name to Micron Medical Corporation. (Exh. S).

66.   On or about March 3, 2020, Micron Medical was registered with the

State of Delaware. (Exh. T).

67.   Upon information and belief, all assets of both StimGuard and Micron

Devices have been transferred to Micron Medical.

68.   Upon information and belief, the management of StimGuard and

Micron Devices is the same as the management of Micron Medical. In other words,

Laura Perryman controls all of these companies.

69.   The assets of all of these companies are the same.

70.     The headquarters and/or physical locations of the companies are the same.

71.     The operations are the same.

72.     The companies share the same website. For example, a Google search for StimGuard is directed to Micron Medical's website.

73.     The shareholders of all the companies are the same.

74.     Upon information and belief, there was a continuity of shareholders which resulted from transferring assets with shares of Defendants' own stock. In other words, Micron Medical stock ultimately came to be held by the shareholders of StimGuard and Micron Devices, so that they became a constituent part of Micron Medical.

75.     Upon information and belief, StimGuard and Micron Devices have ceased ordinary business operations, liquidated, and/or dissolved, and Micron Medical has assumed the obligations of StimGuard and Micron Devices.

76.     Upon information and belief, Micron Medical was formed in response to this or prior lawsuits brought against StimGuard and Micron Devices.

77.     In other words, Laura Perryman and the shareholders of StimGuard and Micron Devices formed Micron Medical Corporation to evade litigation judgments.

## IV.    Causes of Action

## COUNT I
### Breach of Contract

78.     Plaintiffs incorporates by reference all prior paragraphs as if fully set forth at length herein.

79.     Defendants' aforementioned misconduct constitutes a breach of the contract(s), express, implied, and as a matter of law.

80.     Defendants failed to follow the conversion procedure in the Note and breached the terms of repayment in the Note.

81.     As a direct and proximate result of the aforesaid breach of the agreement, Plaintiffs have been damaged as set forth above.

## COUNT II
### Quasi-Contract

82.     Plaintiffs incorporates by reference all prior paragraphs as if fully set forth at length herein.

83.     Plaintiffs are entitled to repayment under the terms of the Note. Plaintiffs invested with the expectation that the terms would be followed, and Plaintiffs would be made whole.

84.     Justice requires adhering to the actual intention of the parties, which means restoring Plaintiffs to their financial position before Plaintiffs' invested in Defendants' companies.

## COUNT III
### Unjust Enrichment

85.     Plaintiffs incorporates by reference all prior paragraphs as if fully set forth at length herein.

86.     Defendants have retained a benefit (Plaintiffs' investment) to Plaintiffs' financial detriment.

87.     In doing so, Defendants have been unjustly enriched.

88.     As a direct and proximate result of the aforesaid breach of the terms of the Note, Plaintiffs have been damaged as set forth above.

## COUNT IV
## Promissory Estoppel

89.     Plaintiffs incorporates by reference all prior paragraphs as if fully set forth at length herein.

90.     Plaintiffs invested in Defendants' companies based on Defendants' aforesaid express and implied promises.

91.     Plaintiffs suffered severe financial loss as a direct result of relying upon Defendants' clear and unambiguous promises.

92.     Injustice can be avoided only by enforcement of Defendants' promises.

## COUNT V
## Third-Party Beneficiary

93.     Plaintiffs incorporate by reference all prior paragraphs as if fully set forth at length herein.

94.    Plaintiffs, Dr. Singh, Kapex, and Multi-Decades Trust, are partners and owners of Plaintiff, Harbor.

95.    Plaintiffs, Harbor, Dr. Singh, Kapex, and Multi-Decades Trust were third-party or otherwise beneficiaries under the contract(s) between the parties.

96.    The contracting parties knew Plaintiffs, Dr. Singh, Kapex, Multi-Decades Trust, and Harbor were donees, creditors, and/or beneficiaries of the parties identified in the Note and the Settlement Agreement.

97.    The aforesaid misconduct of Defendants constitutes a breach of contract(s), express and/or implied at law.

## COUNT VI
**Fraud**

98.    Plaintiffs incorporate by reference all prior paragraphs as if fully set forth at length herein.

99.    Defendants intentionally misrepresented and/or omitted material facts to Plaintiffs.

100.    Specifically, Defendants knowingly misrepresented that Plaintiffs' investment converted to equity, which was false.

101.    Defendants knew this statement was false at the time it was made, and Defendants made this misrepresentation to avoid repaying Plaintiffs' investment.

102.    As the intended result of the aforesaid, Plaintiffs reasonably relied upon said misrepresentations and/or omissions to their detriment. Plaintiffs have not been refunded their investment.

103.    As the direct and proximate results of the aforesaid, Plaintiffs sustained the aforesaid damages (incorporated by reference).

<u>COUNT VII</u>
**Breach of Fiduciary Duty**

104.    Plaintiffs incorporate by reference all prior paragraphs as if fully set forth at length herein.

105.    In the alternative, if Plaintiffs' Note converted to shares as Defendants claimed, Plaintiffs are shareholders and Plaintiffs and Defendants were in a fiduciary relationship.

106.    Defendants' aforementioned conduct constitutes a breach of that fiduciary relationship, including the aforesaid failure to notify Plaintiffs about the status of conversion and the conversion price, *inter alia*

107.    Defendants intentionally acted against Plaintiffs' interests by converting the Note to equity without Plaintiffs' authority and without providing required notice and information.

108.    As a direct and proximate result of the aforesaid breach of fiduciary duty, Plaintiffs have been damaged (as set forth above).

## COUNT VIII
### Piercing the Corporate Veil

109. Plaintiffs incorporate by reference all prior paragraphs as if fully set forth at length herein.

110. Undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs and use of the corporate form to perpetrate a fraud are all examples of improper corporate practices that were utilized when Micron Medical was created.

111. Corporate veil may be pierced whenever one in control of a corporation uses that control or corporate assets to further his personal interests.

112. There was a continuation of the enterprise of Defendants StimGuard and Micron Devices to Defendant Micron Medical, including continuity of management, personnel, physical location, assets, and general business operations.

113. There was a continuity of shareholders which resulted from transferring assets with shares of Defendants' own stock; this stock ultimately coming to be held by the shareholders of Defendants StimGuard and Micron Devices, so that they became a constituent part of Defendant Micron Medical.

114. Defendants StimGuard and Micron Devices ceased ordinary business operations, liquidated, and/or dissolved as soon as legally and practically possible.

115.   Defendant Micron Medical assumed the obligations of Defendants StimGuard and Micron Devices necessary for the uninterrupted continuation of normal business operations of Defendants.

116.   Defendants formed Micron Medical Corporation to evade litigation judgments against StimGuard and Micron Devices. By doing so, Defendants avoided repaying Plaintiffs' investment, to the severe detriment of Plaintiffs.

<u>**COUNT IX**</u>
**Breach of Settlement Agreement**

117.   Plaintiffs incorporate by reference all prior paragraphs as if fully set forth at length herein.

118.   Settlement Defendants' aforementioned misconduct constitutes a breach of the contract(s), express, implied, and as a matter of law.

119.   As a direct and proximate result of the aforesaid breach of the settlement agreement, Plaintiffs have been damaged as set forth above.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants, individually, jointly and/or severally, in an amount in excess of five million ($5,000,000) dollars, including punitive damages, and further relief as this Honorable Court deems necessary and just, plus attorney's fees and costs.

THE POLIQUIN FIRM, LLC.
/s/ Ronald G. Poliquin
RONALD G. POLIQUIN, ESQUIRE

Delaware Bar ID No. 4447
1475 S. Governors Ave.
Dover, DE  19904
(302) 702-5500
*Attorney for Plaintiff*

Dated:  December 17, 2020